COMMISSIONER OF BANKS, EX REL. GOLDSBORO SAVINGS AND TRUST COMPANY, v. PAUL YELVERTON AND WIFE, ANNIE H. YELVERTON.

(Filed 29 March, 1933.)

**1. Statutes A c—N. C. Code, 6464(a) cannot be given retroactive effect.**

N. C. Code of 1931, sec. 6464(a), providing that the beneficiary named in a policy of life insurance, or an assignee of such policy if the transfer is not made with intent to defraud creditors, shall be entitled to the proceeds of the insurance free from the claims of creditors of the insured cannot affect policies written before the effective date of the statute.

**2. Executors and Administrators B a—**

Under our Constitution and statutes the law favors exemption of the proceeds of life insurance from the claims of creditors of the insured as against the interests of the insured's wife and children. Art. X, sec. 7, N. C. Code, secs. 6464.

**3. Execution B e—Judgment debtor is entitled to personal property exemption as often as pressed with execution.**

The five-hundred-dollar personal property exemption prescribed by Art. X, sec. 1, of our Constitution entitles a judgment debtor to the amount of the exemption at all times, and such sum may be set apart for the comfort and support of the judgment debtor as often as the judgment debtor may be pressed with executions.

**4. Same—Judgment debtor may apply $300 monthly income from disability insurance to monthly living expenses under personal property exemption.**

Where supplemental proceedings are instituted upon return of execution unsatisfied on a judgment against a husband and wife, C. S., 721, and it appears that the husband is totally and permanently disabled and has no property upon which execution could be levied, but is receiving the sum of three hundred dollars a month under disability insurance: *Held*, the judgment debtor is entitled, under his personal property exemption, to the three hundred dollars each month if such amount is necessary for the support of himself and wife, and an order appointing a receiver to collect the sum each month and apply it to the judgment after setting apart the personal property exemption, C. S., 722, is erroneous, it not being permissible for the monthly payments to be thus pyramided.

**5. Same—Personal property exemption can be claimed in supplemental proceedings.**

While the statute prescribes the manner in which a judgment debtor's personal property exemption must be set aside, C. S., 737, the exemption exists by virtue of the Constitution, and where the judgment debtor has not waived his exemption he is entitled to claim it in supplemental proceedings instituted by the judgment creditor.

CONNOR, J., dissenting.

APPEAL by defendants from *Grady, J.,* at Chambers, 20 December, 1932. From WAYNE. Reversed.

This was an appeal by the plaintiff from a judgment of the clerk of the Superior Court, entered herein, upon petition in supplemental proceedings, on 2 December, 1932. The court below found the facts as follows and rendered judgment thereon:

"Plaintiff holds a valid judgment against both defendants for the sum of $3,650, which was entered in the Superior Court on 13 July, 1931; execution has been issued on said judgment and returned unsatisfied by the sheriff of Wayne County; no part of said judgment has ever been paid, and plaintiff has caused a warrant in supplementary proceedings to be issued herein, all of which will appear by reference to the judgment roll.

Paul Yelverton owns a life insurance policy, in the sum of $10,000, issued to Annie H. Yelverton, his wife, in which the right to change the beneficiary is not reserved. The interest of Annie H. Yelverton in said policy is vested, and cannot be changed by her husband. On said policy, Paul Yelverton is receiving a monthly allowance of $100, due to his health conditions, which have been passed upon by said insurance company.

Paul Yelverton owns another policy of life insurance in the sum of ten thousand dollars, payable to his wife, with the right to change the beneficiary reserved to him. Said policy has no cash surrender value; but said Paul Yelverton is receiving from said company, under the health benefit clause of said policy the sum of $100 per month. This latter policy was issued by Ætna Life Insurance Company.

Paul Yelverton also has two other policies issued by Ætna Life Insurance Company, from which he is receiving the sum of $50.00 each per month, on account of disabilities.

The court finds that Paul Yelverton is permanently and totally disabled to earn a living from any kind of labor, mental or physical.

The defendants have no property which is subject to seizure and sale under execution.

The defendants contend that their interests in said policies are not subject to condemnation by the court, and that they cannot be reached in this proceeding. The cash surrender value of the $10,000 policy, issued by the Northwestern National Life Insurance Company, and the monthly stipends now being paid to the defendant, Paul Yelverton, are property; that have a value in law. Under section 721 of the Code of this State that 'any property, whether subject or not to be sold under execution (except the homestead and personal property exemptions of other person, or due the judgment debtor), may be ordered applied upon services at any time within sixty days next preceding the order; and also, for sale of public policy, the salaries of public officers and employées of the State, are exempt from seizure under supplementary proceedings.'

Therefore, upon the admitted facts, it is now considered by the court—ordered, adjudged and decreed that the conclusions of law of said clerk be, and the same are overruled; and this cause is remanded to said clerk for the following purposes, to wit: Upon application of the plaintiff he will appoint some competent and disinterested person as receiver of the property and assets of the defendants; and said receiver will qualify by entering into bond in the sum of $1,000, conditioned as required under the statutes in cases of receivers; and he shall have the power to enter suit against the defendants, or any insurance company referred to in the judgment of the clerk, and in this judgment, and recover of such company or companies any sum to which he shall be adjudged entitled; and all of the moneys so collected by him, saving and excepting the personal property exemptions of the two defendants, he will apply upon the judgment heretofore recovered in this action against the defendants."

The defendants excepted, assigned error to the judgment as signed and appealed to the Supreme Court.

*Kenneth C. Royall, Carlisle Smith and Allen Langston for plaintiff.*
*Dickinson & Freeman for defendants.*

CLARKSON, J. The question involved: Where an insured being totally disabled is receiving three hundred dollars ($300) per month for total and permanent disability under the provisions of life insurance policies, payable to the wife of the insured, may the court under judgment against both the insured and his wife, under supplementary proceedings have a receiver appointed to collect the disability payments and apply the same to the judgment? Under the facts and circumstances of this case we think that Paul Yelverton is entitled to the personal property exemption out of the $300 paid him each month as part of the $500 personal property exemption allowed him by the Constitution of North Carolina, if it was necessary for him to spend the $300 each month for his and his family's support and comfort.

Article X, sec. 7, Constitution of North Carolina, is as follows: "The husband may insure his own life for the sole use and benefit of his wife and children, and in case of the death of the husband the amount thus insured shall be paid over to the wife and children, or to the guardian if under age, for her or their own use, free from all the claims of the representatives of her husband, or any of his creditors."

C. S., 6464, N. C. Code, 1931 (Michie), sec. 6464, is as follows: "When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, are entitled to its proceeds against

the creditors and representatives of the person effecting the insurance. The person to whom a policy of life insurance is made payable may maintain an action thereon in his own name. Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred, or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband, or by any other person, and whether the assignment or transfer is made by her husband or by any other person, inures to her separate use and benefit and to that of her children if she dies in his lifetime." *Pearsall v. Bloodworth,* 194 N. C., 628; *Teague v. Ins. Co.,* 200 N. C., 450.

N. C. Code, 1931 (Michie), sec. 6464(a), Public Laws, 1931, chap. 179, sec. 1, is as follows: "If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executor or administrator, shall be entitled to its proceeds and avails against creditors and representatives of the insured and of the person effecting same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person: *Provided,* that subject to the statute of limitations, the amount of any premium for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms unless before such payment the company shall have written notice by or in behalf of the creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors, with specifications of the amount claimed."

The new statute of 1931 above, expressly applies to policies of insurance heretofore or hereafter issued. The courts, however, will not permit it to prejudice the rights of existing creditors in previously issued policies. *Bank of Minden v. Clement,* 256 U. S., 126, 41 Sup. Ct., 408, 65 L. Ed., 857, 9 N. C., Law Rev., 377. *Andrews v. Masons,* 189 N. C., at p. 701. This action was instituted prior to the act of 1931, *supra.*

Paul Yelverton, defendant, has three policies in the Ætna Life Insurance Company, of Hartford, Conn., one dated 10 April, 1929, for $10,000, two dated 13 May, 1929, for $5,000 each. The permanent total disability provisions in these policies are as follows: "If, before default

in payment of premium, the insured becomes totally and permanently disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting business for compensation or profit, the following benefits will be available: When such disability occurs before age sixty—A waiver of the payment of premiums falling due during such disability, and an income of ten dollars a month for each one thousand dollars of the sum insured *payable to the life owner each month in advance during such disability."*

One policy in the Northwestern National Life Insurance Company, Minneapolis, Minn., dated 12 May, 1927, for $10,000, "Total and permanent disability benefit—upon receipt at the company's home office, before the anniversary of the policy on which the insured's age at nearest birthday is sixty and before the maturity of the policy as an endowment and before default in payment of premium, of due proof that the insured has become totally and permanently disabled as defined below, the company will grant the following benefits during the remaining lifetime of the insured so long as such disability continues: Benefits: (a) Waiver of premium—the company will waive the payment of each premium falling due during the period of continuous total disability. (b) Monthly income—the company will also pay to the insured, or if the insured is insane to the beneficiary, a monthly income of $100 ($10 per $1,000 of face amount of policy) *per month for each completed month from the commencement of and during his continuous total disability."*

Under the Constitution and statutes of this State, the law seems to favor the wife and children, where the husband takes out insurance policies for their benefit, free from the husband's creditors. In the $10,000 policy above of Paul Yelverton, Annie H. Yelverton, his wife, is beneficiary and the right to change the beneficiary is not reserved.

Plaintiff holds a valid judgment against both defendants for the sum of $3,650, with interest from 13 July, 1931. It goes without saying that every honest debt a person owes he or she ought to pay, if humanly possible. In the present case the court below finds "that Paul Yelverton is permanently and totally disabled to earn a living from any kind of labor, mental or physical."

It will be noted that the monthly payments under the policies in the Ætna Life Insurance Company, the provisions are "payable to the life owner each month in advance during such disability." The provision in the Northwestern National Life Insurance Company, "from the commencement of and during his continuous total disability." The provisions are practically the same. At the present time Paul Yelverton is permanently and totally disabled to earn a living from any kind of labor mental or physical. Under this kind of insurance indemnity, is there any law to deprive the sick man and perhaps his wife and children

of this peculiar fund, payable during his disability? Shall we call it a contingent trust fund, not property but a mere expectancy? Can it be reached by a creditor under supplemental proceedings? C. S., 711, *et seq. Osborne v. Wilkes,* 108 N. C., at p. 673; *Parker v. Potter,* 200 N. C., at p. 355.

C. S., 721, is as follows: "The court or judge may order any property, whether subject or not to be sold under execution (*except the homestead and personal property exemptions of the judgment debtor*), in the hands of the judgment debtor or of any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment; except that the earnings of the debtor for his personal services, at any time within sixty days next preceding the order, cannot be so applied when it appears, by the debtor's affidavit or otherwise, that these earnings are necessary for the use of a family supported wholly or partly by his labor."

C. S., 722, makes provision for a receiver to be appointed. Whether this sick fund can be reached by supplemental proceedings we do not think it necessary to decide on this record.

C. S., 717, says: "The court or judge may, by order, forbid a transfer or other disposition of, or any interference with, the property of the judgment debtor *not exempt from execution.*"

The court below, among other things, found: "(1) The defendants have no property which is subject to seizure and sale under execution; (2) All the moneys so collected by him *saving and excepting the personal property exemptions* of the two defendants, he will apply upon the judgment heretofore recovered in this action against defendants."

C. S., 721, *supra,* in part, says "except the homestead and personal property exemptions of the debtor."

C. S., 722, *supra,* in part provides for appointment of receiver "except the homestead and personal property exemptions."

Constitution of North Carolina, Article X, sec. 1, is as follows: "The personal property of any resident of this State, to the value of five hundred dollars, to be selected by such resident, *shall be and is hereby exempted from sale under execution or other final process of any court, issued for the collection of any debt.*" C. S., 728. McIntosh N. C. Practice and Procedure in Civil Cases, sec. 756, *et seq.* p. 875.

In *Frost v. Naylor,* 68 N. C., at p. 326, speaking to the subject: "It does not mean any property, *but exempts 'personal property of the nature of five hundred dollars, to be selected by the debtor.' A chose in action is property, and, if selected by the debtor, it must be exempt.* The second-question is, whether the debtor is restricted to the first allotment of exempted property, *or whether he may have it renewed from time to time, so as to keep constantly about him exemptions to the value of five*

*hundred dollars?* A like question arose under the former statute of exemptions, *supra;* and it was decided that the allotment should be made from time to time, *and as often as the debtor might be pressed with executions;* the policy being to enable the debtor not only to have the exemptions allotted to him once, *but to keep them about him all the time, for the comfort and support of himself and family. Dean v. King,* 13 Ired., 20. And such is the policy of our constitutional provision; and it allows the debtor to select what he may think most useful. In this it differs from the former law, which either named the articles which might not be the most useful in certain cases, or allowed the 'freeholders' to name the articles."

In *Campbell v. White,* 95 N. C., at p. 345, we find: "The words of the Constitution, that personal property of the value of $500 and belonging to any resident, 'shall be, and is hereby exempted from sale under execution or other final process of any court, issued for the collection of any debts' (Art. X, sec. 1), is *a continual mandate to the officer to leave so much of the debtor's personal estate untouched for his use,* and of course, the diminution from use, loss, or other cause, *must be replenished with other,* if the debtor has such, up to the prescribed limits. *It is plainly meant that when any final process against the debtor's estate is to be enforced, that much of his estate must be allowed to remain with him, as not liable to seizure." Gardner v. McConnaughey,* 157 N. C., at p. 483; *Befarrah v. Spell,* 178 N. C., at p. 233 "at the last moment."

Conceding that this disability or sick fund is personal property and comes within C. S., 3949, subsec. 6, which in part is as follows: "The words 'personal property' shall include moneys, goods, chattels, choses in action and evidences of debt, including all things capable of ownership, not descendible to the heirs at law. The word 'property' shall include all property, both real and personal"; we think defendant Paul Yelverton would be entitled to his personal property exemption. The right is personal to the debtor and it has not been transferred. *Lane v. Richardson,* 104 N. C., 642.

In *Lockhart v. Bear,* 117 N. C., at pp. 302-3, we find: "But as to personal property, under Article X, sec. 1, of the Constitution $500 worth *is absolutely free from any and all process for the collection or the enforcement of payment of debt.* The creditor had no lien upon this amount of his debtor's personal property; nor can he have *unless it is created by the debtor himself.* There is no judgment lien that attaches; there is no lien by execution until levy, and there can be no levy on this. *So, it is absolutely free from all process for debt.* It may be claimed, and is claimed, that plaintiff was not entitled to this protection until it is laid off and allotted and assigned to him. *We do not think so. It is*

*not the allotment of the appraisers that gives the debtor this protection, but the vigor and force of the Constitution. And if it should be levied before, the debtor is still entitled to have it laid off and assigned to him."*

C. S., 737, is as follows: "When the personal property of any resident of this State is levied upon by virtue of an execution or other final process issued for the collection of a debt, and the owner or an agent, or attorney in his behalf, demands that the same, or any part thereof, be exempt from sale under such execution, the sheriff or other officer making the levy shall summons three appraisers, as heretofore provided, who, having been first duly sworn, shall appraise and lay off to the judgment debtor such articles of personal property as he or another in his behalf selects and to which he is entitled under this article and the Constitution of the State, in no case to exceed in value five hundred dollars, which articles are exempt from said levy, and return thereof shall be made by the appraisers, as upon the laying off of a homestead exemption." The above statute outlines a method, but no statute can override the mandate of the Constitution.

In an attachment the defendant is entitled to claim his exemptions out of the attached property at any time before it is appropriated to the payment of the debt. *Chemical Co. v. Sloan*, 136 N. C., 122.

We think the defendant Paul Yelverton has the right to select the $300 due to him from the insurance companies each month as part of his $500 personal property exemptions allowed to him by the Constitution, and this selection can be made as indicated in the *Frost* and *Campbell cases, supra*. The amounts due him cannot be pyramided in this proceeding so as to deprive this sick man and his family of support and comfort. The Constitution and decisions are to the effect that at all times he is entitled to $500 exemptions. The $300 due by the insurance companies to him each month, he can select as his exemptions and can spend said amount on the support of himself and family each month.

In the affidavit of Paul Yelverton, in reply to affidavit of plaintiffs' liquidating agent, he says: "That affiant has not unjustly refused to apply any property toward the execution of the judgment set out in the judgment against him; *that as he is informed and believes none of said life insurance policies is subject to seizure or to be applied on the said judgment or execution thereunder."*

Paul Yelverton has waived no right to his personal property exemptions. In fact, the court below especially excepts the personal property exemptions being taken by the receiver. If in an attachment case the debtor can claim his exemption, we can see no reason why he cannot do so in this supplemental proceeding. The accumulation of the funds under the supplemental proceeding and receivership cannot enure to the benefit of a creditor or creditors against Paul Yelverton's personal

property exemptions allowed him by the Constitution. If it was necessary for him to spend the $300 each month for his and his family's support and comfort, the receiver has no valid claim to this personal property exemption. The judgment of the court below is
Reversed.

CONNOR, J., dissenting. I think that the judgment in this action should be affirmed. There is nothing in the judgment which deprives the judgment debtor of his personal property exemption, or of his right to have the sums now due or which may become due, from time to time, on the policies of insurance included in his personal property exemption.

The judgment directs the clerk to appoint a receiver in the supplementary proceeding in execution, and authorizes such receiver to collect from the insurance companies sums of money due to the judgment debtor on the policies, not included in his personal property exemption, at the time such sums are due. I think there is no error in the judgment and that it should be affirmed.